2026 IL App (1st) 231216-U

No. 1-23-1216

Order filed July 29, 2026

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| PRAETORIAN INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST CLASS GROUP, INC., and AILEEN CHAN, | ) | |
| | ) | |
| Defendants-Appellants. | ) | Nos. 15 CH 14789 |
| _____ | ) | 16 L 6748 |
| | ) | (Consolidated) |
| FIRST CLASS GROUP, INC., | ) | (Refiled from 10 L 9165) |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | Honorable |
| v. | ) | Sophia H. Hall, |
| | ) | and |
| PRAETORIAN INSURANCE COMPANY, | ) | Honorable |
| | ) | Clare J. Quish, |
| Defendant-Appellee. | ) | Judges, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Rochford and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:    1. The circuit court properly granted summary judgment in favor of the insurance company and against the administrator on the insurance company's breach of contract claim and the administrator's fraud claim because there was no genuine issue of material fact regarding the administrator's failure to comply with the condition precedent under the parties' contract to send the premiums to the insurance company before the administrator would receive its profit commissions.

2. The circuit court had subject matter jurisdiction over the parties' claims because the administrator waived its contractual right to arbitration.

3. The circuit court properly granted the insurance company's motion to dismiss the administrator's breach of contract claim where the administrator failed to comply with the condition precedent under the parties' contract.

4. The insurance company is not entitled to reasonable appellate attorney fees and costs under the terms of the parties' contract.

¶ 2    This appeal[1] involving consolidated cases arises from a compensation dispute based on a contract between Praetorian Insurance Company (Praetorian) and its program administrator, First Class Group, Inc. (First Class), and Aileen Chan, the president of First Class. First Class sued Praetorian, alleging breach of contract and fraud. Praetorian filed a complaint for declaratory relief against First Class and Ms. Chan, alleging, *inter alia*, breach of contract.

¶ 3    In 2017, the circuit court granted Praetorian's motion to dismiss First Class's breach of contract claim. In 2021, the circuit court, *inter alia*, (1) granted summary judgment in favor of Praetorian and against First Class on Praetorian's breach of contract claim against First Class, (2) denied First Class's cross-motion seeking summary judgment or dismissal of Praetorian's complaint based on lack of subject matter jurisdiction, and (3) granted summary judgment in favor of Praetorian and against First Class on First Class's fraud claim against Praetorian. In 2023, the

---

[1]Although this appeal was assigned to a different justice for disposition, fully briefed and ready for review and disposition in November 2024, this appeal was not assigned to the current authoring justice for review and disposition until May 26, 2026.

circuit court granted Praetorian's motion to dismiss with prejudice the remaining counts of its complaint for declaratory relief, thereby disposing of the consolidated cases.

¶ 4     On appeal, First Class and Ms. Chan argue that the circuit court erred by granting summary judgment in favor of Praetorian and against First Class on First Class's fraud claim and Praetorian's breach of contract claim. Specifically, they argue that the circuit court failed to consider Praetorian's admissions in the pleadings and failure to fulfill the condition precedent of calculating the commissions due to First Class. They also argue that the court lacked subject matter jurisdiction over Praetorian's claims based on the parties' contractual mandatory arbitration provision. In addition, they argue that the circuit erred by dismissing First Class's breach of contract claim for failure to state a claim because Praetorian improperly attempted to negate that well pled claim with an affidavit.

¶ 5     For the reasons that follow, we affirm the judgment of the circuit court.[2] We also deny Praetorian's motion for appellate attorney fees and costs.

¶ 6                                    I. BACKGROUND

¶ 7     In June 2002, Praetorian (through its predecessor company Insurance Corporation of Hannover (Hannover)) entered a contract with First Class (the Contract) retroactive to March 2001. Ms. Chan signed the Contract as the president of First Class. Under the Contract, Praetorian appointed First Class as its administrator to solicit and evaluate applications for its insurance lines of business, to underwrite risks and determine premiums for those insurance policies, and to collect, receive, and account for the premiums that it received. In exchange, Praetorian agreed to

---

[2]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

pay First Class regular commissions and make First Class eligible for profit-sharing compensation in the form of additional commissions and bonuses.

¶ 8    Under the Contract, any premiums that First Class collected on behalf of Praetorian were to be held "in a fiduciary capacity for the benefit of [Praetorian] in an interest bearing premium trust account" and forwarded to Praetorian within 45 days of the end of the month in which the risk became effective. First Class had no authority to withdraw sums from this premium trust account without Praetorian's authorization. Under section VI(A) of the Contract, First Class was not entitled to any commissions if it failed to remit premiums to Praetorian:

> "Should [First Class] default on any such payment; all premiums on the unpaid business produced by [First Class] under this Agreement will be due and payable immediately. *[Praetorian] may further withhold or offset payment of any commissions and/or profit-sharing bonuses due [First Class] until all premiums or other money due from [First Class] is received by [Praetorian].*" (Emphasis added.)

¶ 9    Schedule D of the Contract, entitled "Profit Commission Agreement" (Commission Agreement), described the formula for calculating the additional profit-sharing that First Class might receive. First Class agreed under section V(a) of the Commission Agreement that Praetorian's "methods, records and calculations will be controlling with respect to all computations made to determine the Profit Commission under the terms of this [Contract]." Section V(d) of the Commission Agreement specifically stated that no bonus would be paid if First Class was delinquent in the payment of any money due to Praetorian:

> "If you are delinquent in the payment of any money due us or any of our affiliated companies as of the end of any year *no bonus will be paid to you*. Further, no Profit

Commission will be due hereunder and we will not pay you any Profit Commission for any Year during which you have been delinquent three (3) or more times in the payment of any Account Current Monthly Statement." (Emphasis added.)

Illinois law governed the interpretation of both the Contract and the Commission Agreement. The Commission Agreement states that it attaches to and amends the Contract.

¶ 10    Wayne Chan, Ms. Chan's husband, raised questions about Praetorian's profit commission calculations. To address his concerns, Praetorian presented to the Chans exhibits, spreadsheets, and summaries to explain all the components of the profit commission. In 2007, Praetorian met with the Chans in person in South Carolina concerning the profit commission calculations.

¶ 11    In May or June of 2010, First Class terminated the Contract, convinced that Praetorian had miscalculated certain bonus payments and used fictitious or improper data to materially reduce the amount it owed First Class under the Contract. First Class reduced its payments to Praetorian of the premiums to offset what First Class believed Praetorian owed First Class in bonus payments. Based on Praetorian's June and July 2010 agency statements, First Class owed Praetorian $980,620 in premiums. According to Praetorian, this sum increased to $1,241,728 as additional policies issued by First Class went into effect and were uploaded to Praetorian.

¶ 12    In June 2010, Praetorian demanded First Class remit any outstanding premiums and informed First Class that Praetorian would be filing an arbitration action if First Class failed to remit these premiums. Later that month, Praetorian initiated an arbitration against First Class pursuant to section XI of the Contract. The parties agreed to conduct the arbitration in New York. Also in 2010, First Class filed a complaint against Praetorian in the Circuit Court of Cook County,

initially alleging breach of contract for failing to fully pay First Class's profit commissions, and later amending the complaint to also allege a claim of fraud against Praetorian.

¶ 13 In March 2011, First Class filed its preliminary statement in the arbitration, wherein First Class stated that it was "prepared to concede that as of a certain date *** premiums were withheld from Praetorian because of the failure of Praetorian (and its predecessor) to honor their contractual obligations [to pay certain commissions]." In a subsequent affidavit, Ms. Chan averred that First Class had received about $1.1 million in premiums from insureds after First Class deducted certain Contract commissions. In May 2011, Praetorian filed its statement of claim in the arbitration, which sought more than $1.2 million in unpaid premiums. The parties then filed cross-motions for summary judgment.

¶ 14 On October 25, 2011, the arbitration panel issued a partial final award, following briefing by First Class and Praetorian. The arbitration panel specifically found that "gross premium in the amount of at least US Dollars one million one hundred thousand is now due and owing to Praetorian by First Class" and ordered First Class to deposit this sum into an account acceptable to Praetorian within "five business days following the date of this Award." A final hearing was set for November 14, 2011, to address the final reconciliation of the "exact amount of gross premium owed by First Class to Praetorian," as well as the allocation of the costs, fees, and expenses of the arbitration.

¶ 15 On November 10, 2011, the chair of the arbitration panel wrote to the parties' counsel to inform them that there would be no further awards or correspondence unless all outstanding bills were paid. Specifically, First Class had both failed to comply with the partial final award and failed to pay its share of the panel's invoices. On May 4, 2012, the arbitration panel noted its work on

the arbitration matter was concluded. Praetorian sought to confirm the panel's partial final award, but the New York state courts declined to confirm an award that was not final. First Class sought to vacate or modify the partial final award, but the New York Supreme Court declined to do that.

¶ 16    After the arbitration panel's partial final award, Praetorian moved the circuit court to dismiss First Class's complaint, arguing there was no reason to litigate whether Praetorian owed some commission to First Class because it had failed to remit the necessary premiums to Praetorian. The court denied Praetorian's motion to dismiss in July 2012. In July 2014, Praetorian moved the circuit court for leave to file a counterclaim to pursue the more than $1 million in premiums that First Class was still refusing to remit. The court granted the motion over First Class's objections. In February 2015, First Class filed its answer and affirmative defenses to Praetorian's counterclaim. In July 2015, the parties entered an agreed order to voluntarily dismiss their respective claims without prejudice, with one year to refile those claims.

¶ 17    In October 2015, Praetorian filed a complaint for declaratory judgment against First Class and Ms. Chan (case No. 15 CH 14789). The complaint asserted seven causes of action against First Class: breach of contract (Count I); breach of fiduciary duty (Count II); conversion (Count III); fraud (Count IV); accounting (Count VII); faithless servant doctrine (Count VIII); and declaratory judgment (Count IX). The complaint also asserted two causes of action against Ms. Chan: breach of fiduciary duty (Count V), and conversion/piercing the corporate veil (Count VI). Praetorian sought a declaration that it was owed its net premium and that under section VI(A) of the Contract, Praetorian owed no profit commission to First Class. First Class answered all nine counts of Praetorian's complaint in July 2017.

¶ 18    Meanwhile, in July 2016, First Class refiled its lawsuit against Praetorian, alleging Praetorian had failed to pay First Class's profit commissions (case No. 16 L 6748). The complaint asserted claims for breach of contract and fraud. After the court granted Praetorian's motion to dismiss, First Class filed, with leave of court, an amended complaint (its operative complaint), alleging breach of contract (Count I) and fraud (Count II). Praetorian answered the fraud claim but moved to dismiss First Class's breach of contract claim under section 2-615 of the Code of Civil procedure (Code) (735 ILCS 5/2-615 (West 2016)), arguing the provisions of the Contract barred First Class's recovery. In July 2017, the court consolidated case Nos. 15 CH 14789 and 16 L 6748.

¶ 19    On September 8, 2017, the court granted Praetorian's motion to dismiss First Class's breach of contract claim. First Class's appeal of this order is at issue here.

¶ 20    In August 2018, Praetorian moved for summary judgment on all issues in the consolidated cases. In September 2018, First Class and Ms. Chan filed their opposition to Praetorian's motion for summary judgment, and moved for summary judgment on their fraud claim, which alleged Praetorian had improperly calculated First Class's profit commissions. The court ordered the parties to limit their summary judgment briefing to three issues: (1) whether First Class and Ms. Chan had breached their contract with Praetorian by withholding premiums, (2) the propriety of Praetorian's calculation of the profit commissions for purposes of First Class's fraud claim, and (3) whether the court had subject matter jurisdiction over Praetorian's claims.

¶ 21    In August 2019, Praetorian moved for partial summary judgment on (1) its breach of contract claim against First Class and Ms. Chan, (2) First Class's fraud claim against Praetorian, and (3) the issue of the court's subject matter jurisdiction. Then, First Class and Ms. Chan filed their cross-motion for summary judgment.

¶ 22    On February 25, 2021, the court issued a written decision, which denied First Class's cross-motion for summary judgment, finding that the court had subject matter jurisdiction over the lawsuit and that First Class could not prevail on its fraud claim. The court granted summary judgment in favor of Praetorian and against First Class on (1) Praetorian's breach of contract claim against First Class, and (2) First Class's fraud claim against Praetorian. As part of its written decision, the court entered summary judgment for Praetorian and against First Class "in the amount of $1,241,728.06, the net premiums due." On May 21, 2021, the court reduced the decision to a written order. First Class's appeal of this order is at issue here.

¶ 23    Thereafter, the parties continued to file summary judgment motions and cross-motions concerning Praetorian's remaining claims against First Class and Ms. Chan. On June 12, 2023, the court granted Praetorian's motion to dismiss with prejudice its remaining claims against First Class and Ms. Chan. With this order, the court disposed of this case, all claims having been adjudicated or dismissed.

¶ 24    First Class and Ms. Chan timely appealed the courts orders of September 8, 2017; May 21, 2021; and June 12, 2023.

¶ 25                              II. ANALYSIS

¶ 26                       A. Summary Judgment Rulings

¶ 27    First, we address First Class and Ms. Chan's arguments challenging the circuit court's summary judgment rulings.

¶ 28    This court reviews an order granting summary judgment *de novo*. *Aalbers v. LaSalle Hotel Properties*, 2022 IL App (1st) 210494, ¶ 15. Summary judgment is proper when the pleadings, affidavits, depositions, and admissions of record, construed strictly against the moving party, show

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* While the plaintiff does not need to prove its entire case during this stage of litigation, the plaintiff is still required to present some factual basis and evidentiary facts to support the elements of its cause of action. *Id.* "[S]peculation, conjecture, or guess is insufficient to withstand summary judgment." *Id.* A party opposing summary judgment cannot rely on the allegations of its pleading to raise a genuine issue of material fact, "but must affirmatively controvert evidence adduced by the moving party." *United Equitable Insurance Co. v. Calhoun*, 2022 IL App (1st) 210525, ¶ 29. A court should ignore personal conclusions, opinions, and self-serving statements, and consider only facts admissible in evidence, when deciding whether a genuine issue of material fact exists in a summary judgment proceeding. *Id.* Summary judgment is an appropriate tool for disposing of lawsuits or claims when the moving party's right is clear and free from doubt. *Aalbers*, 2022 IL App (1st) 210494, ¶ 15.

¶ 29                                  1. First Class's Fraud Claim

¶ 30    First Class argues that the circuit court erred when it granted summary judgment in favor of Praetorian and against First Class on First Class's claim that Praetorian engaged in fraudulent calculations to reduce First Class's profit commissions. The circuit court's decision was based on the court's ruling that First Class could not establish damages or a false statement of material fact.

¶ 31    First Class was required to present some factual basis and evidentiary facts to support the elements of First Class's fraud claim. The elements of a common law claim for fraud are (1) a false statement of material fact, (2) knowledge by the defendant that the statement was false, (3) an intention to induce the plaintiff to act, (4) reasonable reliance upon the truth of the statement by the plaintiff, and (5) damage to the plaintiff resulting from this reliance. *Avon Hardware Co. v.*

*Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 15. Fraud-based claims require an especially "high standard of specificity," and require the plaintiff to show particular facts establishing the elements of fraud, "including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 15. Summary judgment for the defendant is proper if the plaintiff fails to establish any element of its fraud claim. *Findlay v. Chicago Title Insurance Co.*, 2022 IL App (1st) 210889, ¶ 80.

¶ 32    First, First Class first argues that the circuit court failed to consider Praetorian's judicial admission to First Class's fraud claim. According to First Class, Praetorian's answer to First Class's operative complaint made no answer to the paragraphs that set forth First Class's fraud claim. First Class cites *Gowdy v. Richter*, 20 Ill. App. 3d 514, 520 (1974), for the proposition that a defendant's failure "to explicitly deny a specific allegation in the complaint will be considered a judicial admission and will dispense with the need of submitting proof on the issue." Specifically, First Class contends that Praetorian failed to deny the allegations in the operative complaint that First Class properly performed all of its obligations under the Contract by making all necessary premium payments, thereby requiring Praetorian to calculate the profit commissions owed to First Class according to the Contract's terms. First Class contends that as a result of Praetorian's failure to deny these allegations, First Class did not need to submit proof on the issue of its damages and the circuit court erred when it ruled that First Class failed to establish that it had met the condition precedent under the Contract of paying the premiums due to Praetorian before First Class would be paid its profit commissions.

¶ 33    First Class forfeited review of this argument by failing to raise it below. *Pennymac Corp. v. Jenkins*, 2018 IL App (1st) 171191, ¶ 21 ("arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal"). Forfeiture aside, this argument lacks merit because the record establishes that Praetorian denied the allegations setting forth First Class's fraud claim and, thus, did not make any judicial admissions concerning that claim. Paragraphs 10 through 52 of First Class's operative complaint concerned its contract claim and paragraphs 53 through 75 concerned its fraud claim. Praetorian made no answer to paragraphs 10 through 52 because those paragraphs concerned First Class's breach of contract claim, and Praetorian had concurrently filed a motion to dismiss that claim. Praetorian's answer specifically addressed the allegations of fraud, with specific admissions or denials for paragraphs 53 through 75. Praetorian did not fail to answer First Class's fraud claim.

¶ 34    Second, First Class argues that the circuit court overlooked evidence that showed Praetorian failed to comply with the requirement under the Commission Agreement to first determine the profit sharing calculation, which First Class asserts was a "critical component" of the net premium determination and a condition precedent to First Class's performance of its obligations under the Contract and the Commission Agreement. According to First Class, the amount of the premiums First Class owed Praetorian could not be determined until Praetorian calculated and paid the profit commissions it owed First Class. First Class asserts that Praetorian breached this condition precedent when Praetorian did not calculate the profit commissions for 2010 and, as a result, First Class was not able to determine the amount of net premiums due to Praetorian under section VI of the Contract, so the circuit court erred when it ruled that First Class

failed to meet the condition precedent of paying Praetorian the premiums before First Class could receive payment of its profit commissions.

¶ 35    To support this argument, First Class cites section V(c) of the Commission Agreement, which provides that "[o]n termination, [First Class] will be entitled to a final Profit Commission, if any, for the year in which termination occurs." First Class also cites Praetorian's answers to First Class's interrogatories Nos. 6 and 7 that "[n]o calculation of [the profit commission] for 2010 was performed due to cessation of the [parties'] relationship."

¶ 36    First Class's argument involves the meaning and construction of the Contract. The meaning and construction of a written instrument are questions of law for the court when there are no ambiguous terms, and questions of law are appropriate for summary judgment. *USG Interiors, Inc. v. Commercial & Architectural Products, Inc.*, 241 Ill. App. 3d 944, 947 (1993).

¶ 37    First Class's argument lacks merit. A condition precedent is a condition "in which performance by one party is required before the other party is obligated to perform." *Owen v. Village of Maywood*, 2023 IL App (1st) 220350, ¶ 26. "When contracts contain express conditions precedent, strict compliance with such conditions is required." *Id.* Without strict compliance, the contract does not become enforceable or effective. *Id.* Under the plain language of the Contract (*supra* ¶¶ 8-9), First Class is not entitled to any profit commission until it has remitted the full amount of premiums to Praetorian. Furthermore, as established by Ms. Chan's August 2011 affidavit, First Class admitted that it was withholding net premiums due to Praetorian. First Class's continuing failure to satisfy the necessary prerequisite for being eligible for commissions and bonuses necessarily meant that First Class could not satisfy the damage element of its fraud claim.

Accordingly, we conclude that the circuit court correctly granted summary judgment in favor of Praetorian on First Class's fraud claim.

¶ 38    Third, First Class argues that the court overlooked evidence that Praetorian kept two separate sets of books concerning items related to its policies, premiums, claims, and losses. According to First Class, one set of books contained accurate figures upon which Praetorian should have calculated First Class's profit commissions, but Praetorian used the other set of books, which misrepresented those figures and resulted in Praetorian paying First Class insufficient bonuses and commissions. According to First Class, its losses from the unpaid bonuses and commissions are not less than $1.6 million.

¶ 39    First Class's fraud claim required it to show what misrepresentations were made, when they were made, who made them, and to whom. See *Merrilees*, 2013 IL App (1st) 121897, ¶ 15. First Class, however, failed to make any such showing. To support its claim of fraud, First Class cites a May 2005 e-mail from Brad Diericx, who was a vice president of finance and operations. He was an employee of Hannover, Praetorian, or their parent companies and computed annual loss ratios. This e-mail concerned the First Class program for Praetorian. Diericx stated that the difference in numbers he had reported in the past resulted from trying to use financials that were created in Itasca for 2002 and 2003, and that the financials produced first in New York and then Los Angeles "had major issues" with the Itasca financials. He stated that, "[i]n creating this separate set of books, there becomes a need at some point to get back to using the [New York] numbers as they are the true book of record."

¶ 40    First Class fails to show how Diericx's reference to a separate set of books meant Praetorian misrepresented material facts, induced First Class's reliance, and otherwise damaged First Class.

According to the 2015 deposition testimony of Michael Paul, a former vice president of finance and operations at Praetorian, Diericx's reference to separate books related to the merger of two different companies, which had different systems and booked items differently. After the merger, there was a need to "harmonize what was going on" between the two companies in their respective offices in Los Angeles and New York. Consequently, Diericx created a separate set of books for the Itasca office to harmonize "what was going on" in Los Angeles and New York. Ultimately the books Diericx created for the Itasca office were harmonized into one set of books for Praetorian as a company. First Class has not refuted this explanation or otherwise provided any evidence of fraudulent bookkeeping or fabricated entries. See *Turzynksi v. Libert*, 122 Ill. App. 2d 352, 359 (1970) (fraud cannot be established upon mere suspicion). We conclude that Diericx's e-mail fails to provide support for any of the required elements of misrepresentation for First Class's fraud claim.

¶ 41    First Class also refers to a Nebraska Department of Insurance 2011 audit of Acceptance Insurance Company (Nebraska audit) to support its claim that Praetorian committed fraud. Specifically, First Class states that, under the Contract, Praetorian's liability for insurance policy claims was a component of the profit commission calculation that could reduce the amount of the profit commissions Praetorian owed to First Class. First Class argues that Praetorian improperly used losses incurred by Acceptance Insurance Company (Acceptance) to reduce First Class's profit commissions even though Praetorian never incurred Acceptance's losses. To support this argument, First Class refers to pages 8 through 9 of the Nebraska audit, which sets forth information related to the historical reinsurance agreements of Acceptance, which is referred to as "the Company." The audit states:

"Redland Insurance Company – Acceptance Insurance Companies Inc. sold its wholly owned insurance subsidiary, Redland Insurance Company (Redland), to Clarendon National Insurance Company (Clarendon) effective as of July 1, 2000. Note that Redland was merged with Praetorian Insurance Company in 2010. The transaction included the appointment of the Company as producer and administrator for the business the Company wrote through Clarendon and Redland. The Company reinsured 100% of the business for policies prior to the sale of Redland to Clarendon through the pooling agreement. Any subsequent business written on Redland or Clarendon paper, for which the Company produced and managed, was assumed by the Company with a 100% quota share agreement."

¶ 42     According to First Class, this statement in the Nebraska audit demonstrates that Acceptance, and not Praetorian, was "liable for any claims *** that may have been bought at any time in the future for any policies issued through March 1 to July 31, 2001, and that Praetorian had no liability for those claims under the July 1, 2000 agreement [whereby Acceptance sold its subsidiary insurance company to a subsidiary of Hannover.]" The Nebraska audit, however, neither refers to these dates nor explains how Praetorian would be calculating the commissions and bonuses of its administrators. Instead, First Class's assertion that Praetorian had no liability is based on the self-serving and unsubstantiated August 30, 2019, affidavit of Ms. Chan, and a "self-serving affidavit with no other evidence does not create a genuine issue of material fact." *National Union Fire Insurance Co. of Pittsburgh v. DiMucci*, 2015 IL App (1st) 122725, ¶¶ 2, 79. Moreover, the assertions in Ms. Chan's affidavit are refuted by the 2019 affidavit of Daniel Czabaj, a former employee of Praetorian who was involved in the computation of profit commissions for First

Group. Czabaj averred that the assertions by First Class and Ms. Chan about the reinsurance and transfer of risks from Acceptance in 2001 are incorrect. Specifically, Czabaj avers that Hannover, which was Praetorian's predecessor, purchased its book of program business from Acceptance in March 2001; "100% of the unearned premium and all liabilities associated with those policies were reinsured out of Acceptance and into [Hannover]"; while the Nebraska audit "references Acceptance reinsuring the business 100%, the company accepting that business was [Hannover]"; and the premiums and losses associated with that book "became part of [Hannover's] premium and [Hannover's] losses." The unsupported allegations and personal conclusions in Ms. Chan's affidavit are not facts and are not sufficient to show that a genuine issue of material fact exists to preclude a court from awarding summary judgment. See *Calhoun*, 2022 IL App (1st) 210525, ¶ 29. We conclude that the circuit court correctly granted Praetorian summary judgment because First Class could not satisfy the misrepresentation element of its fraud claim.

¶ 43                              2. Subject Matter Jurisdiction

¶ 44    First Class and Ms. Chan argue that the circuit court erroneously denied First Class's motion for summary judgment based upon a mandatory arbitration provision applicable to all of Praetorian's claims in its complaint for declaratory relief. First Class and Ms. Chan argue that the circuit court lacked subject matter jurisdiction for its rulings on Praetorian's claims because those claims were required to be submitted to arbitration. The circuit court rejected this argument, finding that First Class had waived its right to insist on arbitration when it failed to pay the arbitrators their fee. On appeal, First Class and Chan claim that there is no evidence in the record upon which the circuit court could have concluded that it failed to pay the arbitrators' fees.

¶ 45 Illinois considers arbitration to be a favored method of settling disputes. *Midland Funding LLC v. Hilliker*, 2016 IL App (5th) 160038, ¶ 27. A party, however, can waive the right to arbitrate a dispute when that party engages in conduct that is inconsistent with the arbitration clause. *Id.* This waiver can happen when a party invokes the judicial process and substantially participates in the litigation to a point "inconsistent with an intent to arbitrate, to the detriment or prejudice of the other party." *Id.* That is what happened here.

¶ 46 First Class's conduct was inconsistent with an intent to arbitrate. On November 10, 2011, the arbitration panel chair wrote to counsel to inform them that there would be no further awards or correspondence unless all outstanding bills were paid. Moreover, both Ms. Chan and the New York Supreme Court confirmed the fact that First Class had failed to pay the panel's invoices. In a sworn affidavit, Ms. Chan averred that "First Class Group has not paid any of the fees due and owing to the Chairman of the Arbitration ***." The New York Supreme Court also specifically found that "Respondent [First Class] did not pay its share of the Panel Chair's fees in connection with the arbitration." The failure to pay arbitration fees is an act inconsistent with arbitration and waives the right to pursue arbitration. See *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 933 (11th Cir. 2019) (a party waives "its right to arbitration by failing to pay arbitration fees"); *Pre-Paid Legal Services, Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015) ("A party's failure to pay its share of arbitration fees breaches the arbitration agreement.").

¶ 47 Praetorian was therefore free to pursue its claims in the circuit court after the arbitration was terminated due to First Class's failure to pay the fees. Once Praetorian was back in the circuit court, First Class (twice) answered Praetorian's complaint. In July 2014, Praetorian moved for leave to file a counterclaim in order to pursue the more than $1 million in premiums that First

Class was still refusing to remit. After the circuit court granted the motion, First Class filed its answer and affirmative defenses to Praetorian's counterclaim. In October 2015, Praetorian filed its complaint for declaratory judgment and other relief against First Class and Ms. Chan. Rather than move to compel arbitration, even after another year of litigation, First Class again answered Praetorian's complaint. This answer did not include any affirmative defense addressing arbitration or the lack of subject matter jurisdiction. This too was a waiver of First Class's right to pursue arbitration. See *Watkins v. Mellen*, 2016 IL App (3d) 140570, ¶ 14. Filing an answer without asserting the right to arbitrate results in waiver. *Caterpillar Inc. v. Century Indemnity Co.*, 2019 IL App (3d) 190032, ¶ 29.

¶ 48 Contrary to First Class's argument on appeal, Praetorian was not trying to avoid the results of the arbitration process. Praetorian twice sought to enforce the partial judgment it received from the arbitration panel, but was unsuccessful because the arbitration was deemed terminated due to First Class's failure to pay the fees before any final award could be entered.

¶ 49 We conclude that the circuit court had subject matter jurisdiction over the parties' claims because First Class waived its right to arbitrate.

¶ 50 3. Praetorian's Breach of Contract Claim

¶ 51 First Class argues that the circuit court erred when it granted summary judgment in favor of Praetorian and against First Class on Praetorian's breach of contract claims. Specifically, First Class argues, similar to its arguments concerning its fraud claim, that the court failed to consider Praetorian's admissions in the pleadings and overlooked First Class's argument that no net premium was due to Praetorian under the Contract.

¶ 52    To prevail on a breach of contract claim, Praetorian must show (1) the existence of a valid and enforceable contract, (2) that Praetorian performed the contract, (3) that First Class breached the contract, and (4) that Praetorian was harmed by the breach. *Batson v. Oak Tree, Ltd.*, 2013 IL App (1st) 123071, ¶ 35. Praetorian satisfied each of these elements.

¶ 53    The Contract is a binding and enforceable contract between Praetorian and First Class. Under the Contract, Praetorian appointed First Class as its administrator to solicit and evaluate applications for its insurance lines of business, to underwrite risks and determine premiums for those insurance policies, and to collect, receive, and account for the premiums that it received. In exchange, Praetorian agreed to pay First Class regular commissions and make First Class eligible for profit-sharing compensation. Under the Contract, any premiums that First Class collected on behalf of Praetorian were to be held in a fiduciary capacity for the benefit of Praetorian in an interest bearing premium trust account and forwarded to Praetorian within 45 days of the end of the month in which the risk became effective. Under the Contract, First Class had no authority to withdraw sums from this premium trust account without Praetorian's authorization.

¶ 54    The circuit court found that First Class breached the agreement by failing to remit more than $1.2 million in premiums to Praetorian. The undisputed evidence shows that First Class has withheld more than $1.2 million in premiums from Praetorian. First Class has not rebutted this number or disputed that it has failed to remit this money. To the contrary, First Class has admitted to withholding Praetorian's premiums. On May 17, 2010, First Class informed Praetorian that it was reducing the amount in commissions it was allegedly owed by "taking a credit" against Praetorian's premiums. On March 23, 2011, First Class filed its preliminary statement in the arbitration proceeding, in which it stated that it was "prepared to concede that as of a certain date

*** *premiums were withheld from Praetorian* because of the failure of Praetorian (and its predecessor) to honor their contractual obligations [to pay certain bonus commissions]." (Emphasis added.) In her August 2011 affidavit, Ms. Chan acknowledged the amount of premium at issue, averring that First Class had received about $1.1 million in premiums from insureds after First Class deducted certain Contract commissions (but not the profit commissions).

¶ 55    As addressed above (*supra* ¶¶ 33, 37), we conclude that there is no merit to First Class's arguments alleging that (1) Praetorian's pleadings contain judicial admissions that First Class complied with all of its obligations under the Contract, and (2) Praetorian was required under the Contract and Commission Agreement to calculate and pay First Class its profit commissions before any premium was due to Praetorian.

¶ 56    We conclude that the circuit court correctly granted summary judgment in favor of Praetorian on its breach of contract claim where there was no genuine of material fact concerning First Class's failure to comply with the condition precedent to remit more than $1.2 million in premiums to Praetorian.

¶ 57                          B. First Class's Breach of Contract Claim

¶ 58    First Class argues that the circuit court erred when it dismissed First Class's breach of contract claim, which alleged that Praetorian failed to properly calculate First Class's profit commissions, because Praetorian's motion to dismiss improperly attempted, with an affidavit, to negate the well-pleaded allegations of that claim.

¶ 59    This court reviews *de novo* an order granting a motion to dismiss under either section 2-615 or 2-619 of the Code. *Station Place Townhouse Condominium Ass'n v. Village of Glenview*, 2022 IL App (1st) 211131, ¶¶ 25-26. This *de novo* standard permits this court to affirm a dismissal

on any basis present in the record, "even if the trial court dismissed on an improper ground." *Id.* This means the appellee "may urge any point in support of the judgment on appeal, even though not directly ruled on by the trial court, so long as the factual basis for such point was before the trial court." *Travelers Casualty & Surety Co. v. Bowman*, 229 Ill. 2d 461, 470-71 (2008).

¶ 60    The meaning and construction of a written instrument are questions of law for the court when there are no ambiguous terms, and questions of law are appropriate for summary judgment. *USG Interiors, Inc.*, 241 Ill. App. 3d at 947. The construction of contract language is also appropriate at the motion to dismiss stage. See, *e.g.*, *iMotorsports, Inc. v. Vanderhall Motor Works, Inc.*, 2022 IL App (2d) 210785, ¶¶ 15-28; *Hubbard Street Lofts LLC v. Inland Bank*, 2011 IL App (1st) 102640, ¶¶ 18-22.

¶ 61    First Class alleged Praetorian breached the Commission Agreement by failing to accurately calculate First Class's profit commissions. The circuit court found that First Class could not prevail on this claim and dismissed it.

¶ 62    First Class cannot show that Praetorian breached the Commission Agreement because First Class, as discussed above (*supra* ¶ 37), failed to remit the premiums to Praetorian, which was a condition precedent to the Commission Agreement. See *Owen*, 2023 IL App (1st) 220350, ¶ 26 (a condition precedent requires performance by one party before the other party is obligated to perform and strict compliance is required when a contract contains an express condition precedent). *Id.* Under section VII of the Contract, any premiums that First Class collected on behalf of Praetorian were to be held in a fiduciary capacity for the benefit of Praetorian. Under section VI(A) of the Contract, First Class was not entitled to any commissions if it failed to remit premiums to Praetorian. The clear language of section VI(A) provides that Praetorian could withhold any

commissions or profit-sharing bonuses until "all premiums or other money due from the Administrator is received by [Praetorian]." Section V(d) of the Commission Agreement contained similar language, stating "*no bonus will be paid*" if First Class was delinquent in the payment of any money due to Praetorian. (Emphasis added.)

¶ 63    First Class never remitted the necessary premiums to Praetorian, as required by the Contract. Indeed, First Class has withheld more than $1.2 million in premiums from Praetorian, a number First Class had not rebutted. First Class still does not argue it remitted the premiums to Praetorian. Instead, First Class argues the "net premiums" could not be determined until Praetorian calculated the profit-sharing numbers. This argument is a non sequitur and does not address the fundamental requirement that First Class remit the premiums in order to be eligible for any bonuses or profit-sharing commissions. As the circuit court noted, the Contract provisions do not authorize First Class to withhold the net premiums pending payment of the profit commissions and First Class could not "hold the premiums hostage" while it disputed the amount of the bonuses or commissions.

¶ 64    First Class argues the circuit court erred by considering two of Ms. Chan's affidavits at the motion to dismiss stage. This argument lacks merit. First, there is no indication the circuit court relied on Ms. Chan's affidavits in its decision. During the hearing on Praetorian's motion to dismiss, the circuit court stated that it was dismissing First Class's breach of contract claim based on the plain language of the Contract. Second, a circuit court can consider judicial admissions at the motion to dismiss stage. *iMotorsports, Inc.*, 2022 IL App (2d) 210785, ¶ 13. An affidavit is an example of a judicial admission and is binding on the party who prepared the affidavit. *Capital*

*One Bank, N.A. v. Czekala*, 379 Ill. App. 3d 737, 744 (2008). The circuit court could have considered Ms. Chan's two affidavits at the motion to dismiss stage had it wanted to do so.

¶ 65    We conclude that the circuit court correctly dismissed First Class's breach of contract claim.

¶ 66                    C. Praetorian's Motion for Appellate Fees and Costs

¶ 67    Praetorian has filed with this court a motion to recover its reasonable costs and attorney fees incurred as part of this appeal, pursuant to section X(I) of the Contract.

¶ 68    In response, First Class and Ms. Chan argue, *inter alia*, that the Contract required that all claims thereunder be arbitrated and, thus, the circuit court and this court lack subject matter jurisdiction over claims arising under the Contract. As discussed above, (*supra* ¶¶ 45-49), this argument lacks merit. In the alternative, they argue, without citation to any authority, that a request for fees is not proper in this court because Praetorian did not petition the circuit court for fees and costs.

¶ 69    Section X of the Contract is entitled "Termination and Suspension." Subsection X(I) provides:

> "All documents, files, computer software, computer data, office supplies or any other property (both tangible or intangible) (hereinafter collectively 'Property') provided to [First Class] by [Praetorian] will remain the property of [Praetorian]. [First Class] agrees that upon termination of this [Contract], immediately upon request by [Praetorian], [First Class] will turn over to [Praetorian] *** all Property owned by [Praetorian], which [Praetorian] had provided to [First Class] for its use during the term of this [Contract]. [First Class] agrees to indemnify [Praetorian] for all costs (including attorneys' fees and

costs) incurred by [Praetorian] to retrieve its Property from [First Class] should [First Class] fail or refuse to return [Praetorian's] Property as required by this paragraph. \*\*\*."

¶ 70    Generally, a party is responsible for his own attorney fees. *Abdul–Karim v. First Federal Savings & Loan Ass'n of Champaign*, 101 Ill. 2d 400, 412 (1984). An exception exists when a contract provides for an award of attorney fees. *Mirar Development, Inc. v. Kroner*, 308 Ill. App. 3d 483, 488 (1999). Contractual provisions for an award of attorney fees must be strictly construed, and the court must determine the intention of the parties regarding the payment of fees. *Id.*

¶ 71    Subsection X(I) is not the typical fee-shifting provision that broadly provides for the prevailing party to be reimbursed for its attorney fees and costs by the losing party in the event of a breach of the contract or any litigation arising from a dispute concerning the parties' contract. Instead, relief under subsection X(I) is limited to the costs Praetorian incurs to retrieve its Property, as defined in this section, from First Class if it fails or refuses to return the Property to Praetorian. Although First Class refused to give Praetorian the premiums that were due to Praetorian, we cannot conclude that those premiums are Property for purposes of subsection X(I) of the Contract. Specifically, Property is limited to documents, files, computer software and hardware, computer data, office supplies or any other tangible or intangible property that Praetorian provided to First Class for its use during the term of the contract. Clearly, Praetorian did not provide the premiums to First Class for its use.

¶ 72    We deny Praetorian's motion to recover its costs and reasonable attorney fees as part of this appeal.

¶ 73                                III. CONCLUSION

¶ 74     For the reasons stated, we affirm the circuit court's judgments in favor of Praetorian and against First Class on the parties' motions for summary judgment concerning First Class's fraud claim, subject matter jurisdiction, and Praetorian's breach of contract claim. We also affirm the circuit court's judgment dismissing First Class's breach of contract claim.

¶ 75     Affirmed.